IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2018 Session

## KATHRYN A. DUKE v. HAROLD W. DUKE, III

**Appeal from the Chancery Court for Williamson County**
**No. 33519      James G. Martin, III, Judge**

_____

### No. M2016-01636-COA-R3-CV

_____

In this post-divorce matter, the trial court ordered the father, Harold W. Duke, III ("Father"), to deposit $5,729.17 and $5,312.50 per month, respectively, into the educational accounts of the parties' two daughters. The court determined that the children's separate trust accounts were not required to be utilized to fund their college expenses. The court also awarded the mother, Kathryn A. Duke ("Mother"), $4,006.00 for attorney's fees incurred in pursuing a civil contempt petition against Father, as well as $25,000.00 for attorney's fees and $1,237.50 in discretionary costs related to establishment of the proper amounts to be contributed by Father to the educational accounts. Father has appealed. Discerning no error, we affirm the trial court's judgment. We decline, however, to award Mother attorney's fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Steve D. Gibson, Nashville, Tennessee, for the appellant, Harold W. Duke, III.

Lawrence J. Kamm, Nashville, Tennessee, for the appellee, Kathryn A. Duke.

### OPINION

#### I. Factual and Procedural History

This is a post-divorce action presenting issues regarding, *inter alia*, proper interpretation of the trial court's prior orders and the propriety of the trial court's

evidentiary rulings. These parties have been before this Court on appeal on three prior occasions. *See Duke v. Duke*, No. M2009-02401-COA-R3-CV, 2012 WL 1971144 (Tenn. Ct. App. June 1, 2012) ("*Duke I*"); *Duke v. Duke*, 398 S.W.3d 665 (Tenn. Ct. App. 2012) ("*Duke II*"); *Duke v. Duke*, No. M2013-00624-COA-R3-CV, 2014 WL 4966902 (Tenn. Ct. App. Oct. 3, 2014) ("*Duke III*"). In *Duke I*, this Court explained the factual history prior to the first appeal as follows:

> Kathryn A. Duke ("Mother") and Harold W. Duke, III, ("Father") were married on October 12, 1991; they are the parents of three children who were 11, 9 and 7 at the time of the institution of this proceeding. Father is a physician who is the owner of Emergency Services Network, a business engaged in the operation of emergency departments in hospitals. Mother is trained and previously worked as a registered nurse; since the birth of the first child on November 11, 1995, she has not had employment outside the home. Mother initiated this action on May 2, 2007 by filing a complaint for legal separation on grounds of irreconcilable differences and inappropriate marital conduct; she amended the complaint to seek a divorce and by adding Father's substance abuse as a ground. Father counterclaimed, seeking a divorce on grounds of irreconcilable differences and inappropriate marital conduct. After what was clearly a contentious process, a six day trial was held. The court thereafter entered decrees granting Mother a divorce on the ground of inappropriate marital conduct; naming Mother primary residential parent; valuing and dividing the marital assets; awarding Mother rehabilitative alimony of $8,000 per month for eight years; finding Father guilty of two counts of contempt; and awarding Mother $309,167.25 in counsel fees.

*Duke I*, at *1 (footnote omitted).

During the first appeal, the parties presented numerous issues stemming from the trial court's final decree, including issues regarding the parties' co-parenting time with the children and the court's valuation of marital assets. *See Duke I*, at *1. One issue raised by Father concerned the court's determination that Father would be required to establish an educational trust for each child, into which he was ordered to contribute $15,000.00 annually for each of the two youngest children, E.D. and C.D., and $20,000.00 annually for the eldest child, W.D. *See Duke I*, at *4. On appeal, this Court stated the following with regard to this issue:

> The court ordered that Father establish an educational trust for each child, into which he is to contribute $15,000 annually for each of two of the children and $20,000 annually for the third child. While Father

2

acknowledges the court's discretion to order that the trust be established and funded, he contends that the amount of yearly contributions results in balances which are "far in excess of even an expensive education," inequitable, and beyond the amounts contemplated by the Child Support Guidelines. He further argues that, since he had previously established an account for each of the children which is greater than cost of an education at the University of Tennessee, the children's post-high school educational expenses should be paid from that account.

The record shows that Father is the custodian of certain accounts at Stern Agee, which he referred to as "UTMA, 'Uniform Transfer to Minor Act'" accounts, in the name of each of the children which were established prior to the institution of the divorce proceedings. Although Father testified that the accounts are for the college educations of each child, the record is not clear that the accounts are limited to that purpose or that the accounts are what the court intended when it ordered that the educational trusts be established. The order to establish the educational accounts does not give the basis upon which the amount of the annual contribution was determined, and neither party has cited evidence in the record of the anticipated cost of a college education for the children.

While the trial court acted within its discretion in ordering the accounts established, the evidence does not support the amount of the annual contributions ordered. Accordingly, we affirm the decision that Father establish educational accounts for each of the children and remand the case for the court to further consider the amount of the annual contributions. The court may also consider the extent to which the UTMA accounts are presently or can be restricted to provide for the children's education.

*Duke I*, at *4-5.

The second appeal in this matter was filed pursuant to Tennessee Supreme Court Rule 10B, regarding the trial court's denial of a motion for recusal. *See Duke II*, at 667. This Court affirmed the trial court's ruling on appeal, determining that recusal was not warranted. *See Duke II*, at 674. In *Duke II*, this Court noted that the case had been reassigned from Judge Timothy Easter to Judge James G. Martin, III, prior to the recusal motion's filing. *See Duke II*, at 667.

The third appeal occurred in 2014, following the trial court's modification of the parties' permanent parenting plan. *See Duke III*, at *1. As this Court explained:

3

The trial court reduced Father's time with the parties' children to four hours of supervised time every other weekend. The trial court so limited the Father's parenting time as a result of his intentional interference with the children's relationship with Mother. Father appeals the trial court's modification of the parenting schedule. In addition, he claims the trial court erred by: (1) limiting Father's communication with the children; (2) refusing Father's request to retain an expert to rebut testimony by an expert Mother and Father initially agreed would provide a recommendation about parenting time; (3) excluding certain portions of his treating physician's testimony; (4) requiring the children to continue counseling sessions with a psychologist; (5) terminating Father's participation in educational decisions for the children; (6) instituting a permanent injunction against Father; (7) finding Father guilty of six counts of criminal contempt; (8) finding Father in civil contempt; (9) denying Father's requests to reopen the proof to present newly discovered evidence; and (10) awarding Mother $678,933.05 in attorneys' fees and discretionary costs. We reverse the judgment of the trial court finding Father in civil contempt. We affirm the judgment in all other respects.

*Id*.

Following the remand from this Court, the trial court conducted a hearing on December 1, 2015, and April 15, 2016, regarding the amount of Father's required contributions to the children's educational trust accounts. *See Duke I*, at *4-5. At the commencement of the December 1, 2015 hearing, Father's counsel referenced and read an excerpt from the transcript of proceedings held on September 29, 2009 ("2009 Transcript"), before the prior trial judge, Judge Easter, regarding motions to alter or amend filed after the initial divorce judgment. The transcript, however, was not offered as an exhibit at that time.

During the hearing, Mother presented the testimony of Janet Schneider, Director of College Counseling and Senior Class Dean at the University School of Nashville. Ms. Schneider testified as an expert regarding the potential costs of a post-secondary education for the parties' daughters, utilizing information gathered from Mother regarding the daughters' respective grades and interests.

Father was questioned during the hearing regarding his income in the years following the divorce. Father acknowledged that his gross income for the years 2010 to 2014 averaged approximately $2,000,000.00 per year. Father also testified regarding his assets and liabilities, resulting in the trial court's calculation of Father's net worth of

approximately $2,000,000.00. Following the testimony of other witnesses, including the parties, on December 1, 2015, the hearing was continued.

On December 17, 2015, Mother filed a motion seeking permission to disclose financial information to her expert in preparation for the upcoming hearing date. The trial court entered an order on January 11, 2016, noting that a telephonic hearing concerning Mother's motion was conducted on December 17, 2015. In the January 11, 2016 order, the court clarified that it would consider the facts "as of the date when the original Order on the educational accounts was entered, when and if provided, and evidence of reasonable cost for the children's college expenses going forward." The court also found that "educational costs for the parties' oldest child, [W.D.], is a moot issue." The court granted Mother permission to disclose financial information produced during the December 1, 2015 hearing to her expert.

The hearing regarding the children's educational funds continued on April 15, 2016. Ms. Schneider again testified regarding the projected costs of a post-secondary education for the parties' daughters, having recalculated such costs, at the trial court's direction, based on information available in 2009, the time of entry of the original order regarding educational funds. Father testified concerning his earnings for the years 2005 to 2009, demonstrating that his gross income for those years also averaged approximately $2,000,000.00 per year.

Following the trial's conclusion, the trial court subsequently entered a Memorandum and Order on June 28, 2016. In the Memorandum and Order, the trial court credited the testimony of Ms. Schneider regarding projected higher education costs for the parties' children. The court noted that Ms. Schneider testified concerning her training and credentials, and the court found her to be "credible and well-qualified to testify concerning colleges and universities appropriate for particular students as well as the projected cost of attending those colleges and universities." As the court reiterated, Mother presented Ms. Schneider with personal information regarding the children, including their grade reports, transcripts, teacher comments, and a record of extracurricular activities. Ms. Schneider accordingly prepared a list of recommended colleges that she believed would be suitable for the children and projected the costs of their college educations. According to the court, the parties' son, W.D., was omitted from this analysis because he had already begun attending Emory University and his college tuition was being paid directly by Father.

The trial court relied upon Ms. Schneider's testimony in determining that the parties' daughter, E.D., would likely incur costs of approximately $247,000.00 to $288,000.00 in obtaining her college degree. The court further relied upon Ms. Schneider's testimony in determining that the parties' other daughter, C.D., would likely

incur costs of approximately $275,000.00 to $305,000.00 in obtaining her college degree. The court noted that the cost of W.D.'s attendance at Emory University would be approximately $225,000.00 for his remaining three years. The court also noted that Father "did not challenge the accuracy of Ms. Schneider's testimony and the Court finds it credible and reasonable."

With regard to the children's UTMA accounts, the trial court found that Mother, who was custodian of said accounts, had retained an attorney, Jeffrey Mobley, to advise her regarding estate matters. Upon Mr. Mobley's suggestion, Mother transferred the assets held in the children's UTMA accounts into qualified minors' trusts in order to protect those assets from creditors' claims, provide greater investment opportunities, and provide more flexibility concerning distributions for the children's support. The court found that the assets in the UTMA accounts were, in part, traceable to gifts from Mother's family and that Mother viewed the respective accounts as a "nest egg" for each child. The court further found that each child's trust held assets ranging in value from $125,000.00 to $141,000.00 as of October 2015 and had consistently grown in excess of 10% per year.

The trial court noted that Father had ceased funding the children's educational accounts in 2011 without leave of court, such that these accounts only held $45,000.00 to $60,000.00 each. According to the court, if Father had continued to fund these accounts each year in the respective amount ordered by the court in 2009, E.D.'s account would have had a principal balance of $120,000.00 upon her high school graduation, and C.D.'s account would have had a principal balance of $150,000.00 when she graduated from high school.

The trial court determined that Father's average yearly income, after taxes, for the years 2009-2014, was approximately $1,344,267.66. Despite Father's significant income, the court acknowledged that Father sought to have the monies in E.D.'s and C.D.'s trust accounts utilized to pay for their college educations before he was obligated to pay additional monies toward their educational expenses. The court ultimately concluded:

> While not explained in its ruling, the facts and circumstances before this Court in 2009 suggest that this Court did not intend for the UTMA accounts to be used to fund the children's college education, in whole or in part. In reaching that conclusion, this Court determined it would have so stated had it been the intention of the Court in 2009 for the UTMA accounts to be used to fund each child's college education, in whole or part. The Court named [Mother] the sole custodian of UTMA accounts and directed that [Father] be the custodian of the educational trusts to be funded by him.

6

The Court held that the UTMA accounts were funded with monies provided primarily by [Mother's] family during the course of the parties' marriage. There was no stated intent or purpose that the UTMA accounts be used exclusively for the children's college education.

\* \* \*

With knowledge of the foregoing facts in mind, it is this Court's belief that it intended the educational trusts to fund the children's college education without reference to the assets in their UTMA accounts when it made its 2009 decision. While [Father] testified at the trial of these proceedings that funds in the children's UTMA accounts were for the children's college education, [Mother] testified to the contrary. The Court credits [Mother's] testimony.

\* \* \*

The parents of these children are wealthy and have provided their children with a lifestyle commensurate with the parents' wealth. As noted above, absent the divorce, it would ordinarily be expected that the parents would provide their children with a college education at an appropriate college or university without contribution by the children from their assets. Upon his attaining age 18 in November 2013, [W.D.] moved from [Mother's] home and began living with his father. He has severed all ties with his mother. [W.D.] attended Emory University during the 2014-2015 academic year, a school costing in excess of $70,000 a year. [Father] paid the cost of [W.D.'s] attendance without demanding contribution from [W.D.'s] UTMA account or using the money [Father] had set aside in [W.D.'s] educational trust which, at the time of [W.D.'s] attendance at Emory, had a balance in excess of $60,000. To Order that [E.D.] and [C.D.'s] UTMA assets be used to fund their college education would send a message to [E.D.] and [C.D.] that if they will sever their relationship with their mother, their father will preserve their UTMA assets and pay for their college education. The Court declines to send such a message. [E.D.] and [C.D.] should not be put in that position.

Relying on the testimony of Ms. Schneider, the trial court determined that E.D.'s college education would cost approximately $275,000.00 and C.D.'s would cost approximately $300,000.00. Based on the balance in each daughter's educational account of approximately $45,000.00, the court found a shortfall of $230,000.00 and $255,000.00, respectively. The court thus ordered Father to deposit $23,750.00 into

E.D.'s educational account by August 1, 2016, and $5,729.17 each month thereafter through August 2019. The court similarly ordered Father to deposit $3,451.67 per month into C.D.'s educational account for a total of forty-eight months. The court further determined that the ordered contributions, when combined with Father's other ordered obligations with regard to the children, would not exceed 41% of Father's net annual income.

Mother filed two motions seeking to alter or amend the trial court's ruling. In the first motion, Mother asserted that, based on Father's history of untimely payments, the court should allow her the ability to access the funds in the educational accounts in order to pay the children's college expenses. The court denied this motion. In her second motion, Mother averred that the trial court had made a mathematical error in calculating the payments necessary to fund C.D.'s educational expenses. On July 14, 2016, the court amended its prior order to correct this mathematical error, determining that the appropriate amount of the monthly deposit into C.D.'s educational account would be $5,312.50. Father filed a timely notice of appeal.

During the pendency of this appeal, the parties were involved in a dispute regarding the proper content of the appellate record. On February 17, 2017, this Court remanded the matter to the trial court for resolution of this issue. The trial court held a hearing on April 13, 2017, wherein Father's counsel argued that the 2009 Transcript should be made a part of the appellate record because it was referenced by counsel at the beginning of the hearing on December 1, 2015. The trial court determined that the 2009 Transcript should not be part of the appellate record, however, because it was never considered by the trial court when rendering its decision in this matter. This Court entered a subsequent order on May 22, 2017, directing that although the trial court's decision regarding the content of the appellate record was not a judgment subject to appeal as of right, the parties would not be precluded from addressing this issue in their briefs.

On August 1, 2017, this Court entered an order, noting that Mother had filed a motion seeking to dismiss Father's appeal because Father had filed several motions in the trial court seeking relief pursuant to Tennessee Rule of Civil Procedure 60. This Court determined that a remand was proper to allow the trial court to consider Father's motions, particularly, as pertinent to the issues raised here, considering Father's allegations of fraud. Following a subsequent hearing conducted by the trial court, with Judge Deanna Bell Johnson now presiding, the court determined that Father had failed to substantiate his fraud allegations. The trial court therefore dismissed Father's motions, and this appeal proceeded.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by failing to consider the 2009 Transcript when determining the intended meaning of the court's October 26, 2009 order regarding the children's UTMA accounts.

2. Whether the trial court erred by misconstruing the October 26, 2009 order.

3. Whether the trial court erred by granting Mother's motion for a protective order and requiring Father to pay associated attorney's fees.

4. Whether the trial court erred by allowing Ms. Schneider to testify as an expert and by ordering Father to pay Ms. Schneider's expenses.

5. Whether the trial court erred by effectively increasing Father's monthly child support obligation without making the required findings supporting such an increase.

6. Whether the trial court abused its discretion by ordering Father to contribute an unreasonable amount to the children's educational accounts.

7. Whether the trial court judge erred by failing to recuse himself in this matter.

Mother raises the following additional issues, which we have also restated slightly:

8. Whether Father's appeal should be dismissed as a sanction for violation of Tennessee Supreme Court Rule 8, Tennessee Rule of Professional Conduct 3.3(a)(1) or, in the alternative, whether his issues should be deemed waived due to deficiencies in his appellate brief.

9. Whether Mother should be awarded attorney's fees on appeal.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness.  *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV.  Rules of Professional Conduct and Deficiencies in Brief

As a threshold matter, Mother asserts that Father's appeal should be dismissed due to factual misrepresentations contained in his appellate brief regarding the proceedings conducted by the trial court.  Mother argues that such misrepresentations constitute a violation of Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.3(a)(1), which provides:  "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal."  Although this Court does not condone knowingly made misrepresentations by counsel in an appellate brief, Mother has cited no authority for her contention that such a violation of the Rules of Professional Conduct should result in the dismissal of a litigant's appeal.  We make no determination as to Mother's assertions in this regard.  Nonetheless, we caution appellate attorneys that any such misrepresentations, when apparent from our thorough review of the record, weigh against the attorney's credibility with this Court.

Mother also asserts that Father's appeal should be dismissed due to deficiencies in his appellate brief regarding, *inter alia*, citations to the record, citations to legal authority, and page limitations.  Although Father's brief fails to fully satisfy the requirements of Tennessee Rule of Appellate Procedure 27, we determine that this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate Father's issues on the merits.  *See* Tenn. R. App. P. 2; *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("[T]here are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.").

V. 2009 Transcript, October 2009 Orders, and Proceedings Following Remand

During the hearing following remand from this Court, Father's counsel referenced and quoted from the 2009 Transcript, which memorialized a hearing conducted by Judge Easter regarding the parties' competing motions to alter or amend the final divorce judgment. At the commencement of the December 1, 2015 hearing, the following exchange occurred between Father's counsel and the court:

Father's Counsel: The Court, on the motion to alter or amend, stated in the transcript . . . "It is my thinking, [Mother's Counsel] – and if I put it in a memo or order somewhere differently, you tell me – but I'm thinking it was the Court's intention that this educational trust be made up of the existing accounts that were already in place and he continue to contribute 1,500 a year to the – or 15,000 a year to those." That's what the Court said during that motion to alter or amend.

Trial Court: That's not what the Court did –

Father's Counsel: No.

Trial Court: – in its order. And I'm bound by the order of the Court.

Father's Counsel: I understand.

Father's counsel did not offer the transcript as an exhibit or otherwise further argue concerning its consideration by the trial court.

Father asserts that the trial court erred by failing to consider the 2009 Transcript when interpreting the court's October 26, 2009 order addressing Father's motion to alter or amend.[1] We note, however, that the trial court had a duty not only to effectuate its own prior orders but also to effectuate this Court's decision upon remand. As this Court has previously explained:

After a case has been appealed, a trial court does not reacquire jurisdiction over the case until it receives a mandate from the appellate court. Once the mandate reinvests the trial court's jurisdiction over a case,

---

[1] Two orders were entered by the trial court on October 26, 2009. One specifically addressed the issues raised by Mother's motion to alter or amend, and the other addressed the issues raised by Father's motion.

the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. *Raht v. Southern Ry.*, 215 Tenn. 485, 497, 387 S.W.2d 781, 786 (1965). The appellate court's opinion becomes the law of the case, *Gill v. Godwin*, 59 Tenn. App. 582, 786, 442 S.W.2d 661, 662-63 (1967), foreclosing and excluding any complaint, constitutional or otherwise, as to the issues addressed and decided in the appellate court's opinion. *Cook v. McCullough*, 735 S.W.2d 464, 469 (Tenn. Ct. App. 1987). Thus, the trial court does not have the authority to modify or revise the appellate court's opinion, *McDade v. McDade*, 487 S.W.2d 659, 663 (Tenn. Ct. App. 1972), or to expand the proceedings beyond the remand order. *Cook v. McCullough*, 735 S.W.2d at 470. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion. *Raht v. Southern Ry.*, 215 Tenn. at 497-98, 387 S.W.2d at 786-87.

*Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 WL 504905, at *3 (Tenn. Ct. App. May 14, 2001). Furthermore, as our Supreme Court has elucidated:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 Am. Jur. 2d Appellate Review § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. App. 1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939 S.W.2d at 90 (citing other authority).

*Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998).

In the first appeal in this matter, the trial court's October 26, 2009 orders were considered by this Court as they related to, *inter alia*, the trial court's determination that Father would establish educational accounts for each of the parties' three children and that he would contribute certain annual amounts into said accounts. *See Duke I*, at *4-5. In order to understand the proper context of the October 26, 2009 orders, we must first examine the trial court's initial divorce decree in relation to the issue of educational funds.

In the trial court's permanent parenting plan, which was incorporated into the parties' divorce decree, the court had stated in pertinent part:

> Father shall contribute to an education trust fund established for each child in the sum of Fifteen Thousand Dollars ($15,000) annually per child, except Father shall pay Twenty Thousand Dollars ($20,000) per year for [W.D.], until each child reaches the age of Twenty-Five (25) years or graduates from college, vocational and/or technical training or other post secondary education whichever occurs first. The Father and Mother shall be named joint custodians of the property of the child in said trust. The funds in the said custodial accounts shall be maintained for the use and benefit of the child named on such custodial accounts and used for [education-related costs].

Mother subsequently filed a motion to alter or amend, raising the issue of, *inter alia*, the court's disposition with regard to the children's existing UTMA accounts because the divorce decree was silent on this subject. The October 26, 2009 order addressing Mother's motion states in pertinent part:

> The Court neglected to address in its property division the Stern Agee Investment accounts (UTMA accounts ending in [account numbers]) which were primarily funded during the marriage by gifts from [Mother's] family. These accounts shall be assigned to the custody of [Mother]. These accounts shall continue to be used for the benefit of the parties' children.

Father similarly filed a motion to alter or amend, which raised, as relevant herein, the issue of the educational funds. The October 26, 2009 order addressing Father's motion states in pertinent part:

> The Educational Trust provision set forth at section III, paragraph B on pages 5 and 6 of the Permanent Parenting Plan adopted by the Court in its June 29, 2009 Findings of Fact and Conclusion of Law shall be amended to require Husband/Father to establish three separate education trust[s], one for each of the parties' children. Father shall be the designated custodian of these accounts which he shall invest in a prudent manner. Father shall pay the sum of Fifteen Thousand Dollars ($15,000) (annual contribution) annually per child, except Father shall pay Twenty Thousand ($20,000) per year for [W.D.,] until each child reaches the age of eighteen (18) or graduates from high school. . . . The funds in these educational trust

13

accounts shall be maintained for the use and benefit of the child named on such accounts and used for his or her educational cost for college . . . .

Any funds remaining in such educational trust accounts because of nonuse, child's decision to not seek a post high school education, death of child, or for any other reason shall revert to Father when the child reaches the age of twenty-five (25).

Reading these provisions in concert demonstrates that the trial court's initial order directed Father to contribute to "an education trust fund established for each child" without expressly requiring Father to establish accounts separate from the previously established UTMA accounts. Moreover, the court neglected to mention or address the existing UTMA accounts in its judgment. Following the filing of the competing motions to alter or amend, the trial court clarified that (1) Mother would be custodian of the existing UTMA accounts for the children and (2) Father would establish separate educational accounts for each of the children, for which accounts he would be custodian and into which he would make ordered annual deposits. Such was the status of the trial court's directives regarding the children's educational funds and UTMA accounts at the time of the first appeal.

On appeal, this Court affirmed the trial court's decision requiring Father to establish separate educational funds for the children. *See Duke I*, at *5. However, this Court remanded for further consideration by the trial court the amount of Father's ordered contributions because the October 26, 2009 orders "[did] not give the basis upon which the amount of the annual contribution was determined, and neither party has cited evidence in the record of the anticipated cost of a college education for the children." *Id.* at *4. This Court further directed that, upon remand, the trial court could also consider "the extent to which the UTMA accounts are presently or can be restricted to provide for the children's education." *Id.* at *5.

Accordingly, following remand, the trial court could not alter the requirement that Father establish separate educational funds for the children because this ruling had become the "law of the case." *See Memphis Pub. Co.*, 975 S.W.2d at 306. Based on this Court's decision, the trial court could only consider two things: (1) "the amount of [Father's] annual contributions" to the children's educational accounts and (2) "the extent to which the UTMA accounts are presently or can be restricted to provide for the children's education." *See Duke I*, at *5. We note that when rendering its Opinion, this Court had in the appellate record and considered both of the October 26, 2009 orders and the 2009 Transcript. *Id.* at *4-5, *13.

Father asserts that the trial court erred by failing to consider the 2009 Transcript upon remand when making a determination regarding the above-referenced issues. The bases for Father's position are that (1) the trial court made certain statements at the beginning of the hearing regarding the UTMA accounts indicating that the court intended for the funds in the UTMA accounts to be used toward the children's college expenses and (2) Mother's counsel purportedly "stipulated" that each child would need no more than $200,000.00 for college. As our Supreme Court has explained: "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting *Anil Constr., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014)). Therefore, we determine that the trial court did not err in failing to consider the court's statements in a prior transcript when the court's written orders provide clear directives regarding the UTMA accounts and educational accounts.[2]

Moreover, concerning stipulations, this Court has previously elucidated:

By definition a stipulation is an agreement "which is entered into mutually and voluntarily by the parties." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999). This Court has recently described the nature of a stipulation:

Parties may stipulate to questions of fact or legal strategies but may not stipulate to questions of law. Though a stipulation need not follow a particular form, its terms must be definite and certain in order to afford a proper basis for judicial decision. If the stipulation is ambiguous and uncertain in its terms, it should be disregarded by the courts. A stipulation should discuss the who, what, where and why of the contested matter, and specify the terms of the settlement and any conditions or sequence of events that attach thereto. Stipulations must be carefully constructed and drawn, and if they are not, they should not be incorporated in an order. Factors to consider in determining whether a stipulation was entered into properly are whether the party had competent representation of counsel, whether extensive and detailed negotiations occurred, whether the party agreed to the

---

[2] We further note that the transcript was not offered as an exhibit or offer of proof at the December 1, 2015 hearing. "It is well settled that issues not raised at the trial level are considered waived on appeal." *Moses v. Dirghangi*, 430 S.W.3d 371, 381 (Tenn. Ct. App. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009)).

> stipulation in open court, and whether, when questioned by
> the judge, the party acknowledged understanding the terms
> and that they were fair and equitable.
>
> *Stumpenhorst v. Blurton*, No.W2000-02977-COA-R3-CV, 2002 WL
> 1751380, at *4 (Tenn. Ct. App. Feb. 27, 2002) (citations and quotations
> omitted). Thus, a stipulation requires a mutual understanding between the
> parties as to the specific matter agreed upon, in terms that are "definite and
> certain in order to afford a proper basis for judicial decision." *Id*.

*Hyneman v. Hyneman*, 152 S.W.3d 549, 555 (Tenn. Ct. App. 2003). This Court made clear in *Duke I* that it had reviewed the 2009 Transcript relative to the issues on appeal and determined that there was no "evidence in the record of the anticipated cost of a college education for the children." *See Duke I*, at *4-5, *13. This was the stated reason for this Court's remand on this issue. As such, this Court clearly found no "stipulation" concerning college expenses within the record that would satisfy the above definition. We therefore conclude that Father's arguments concerning the 2009 Transcript are unavailing.

Father similarly argues that the trial court misinterpreted the October 26, 2009 orders based in large part on the trial court's statements and purported stipulation by Mother's counsel contained in the 2009 Transcript. Having determined Father's assertions of error regarding the transcript to be without merit, we will consider whether the trial court properly interpreted its prior orders as well as whether the trial court followed this Court's directives upon remand. We again emphasize that the trial court could only consider two matters following remand: (1) "the amount of [Father's] annual contributions" to the children's educational accounts and (2) "the extent to which the UTMA accounts are presently or can be restricted to provide for the children's education." *See Duke I*, at *5. Our thorough review of the record has revealed that the trial court properly carried out this Court's directives in both instances.

Concerning the amounts of the required deposits into the children's educational accounts, the trial court conducted a hearing upon remand and heard proof regarding the projected costs of post-secondary educations for E.D. and C.D. Mother presented the testimony of Ms. Schneider, who stated that she had performed college counseling for children, both through the University School of Nashville and on a private basis, for thirty-eight years. After presenting her curriculum vitae and credentials to the court, Ms. Schneider testified regarding the information she had been given about the parties' children and her resultant projections for college selections and costs. The court ultimately found Ms. Schneider to be "credible and well-qualified to testify concerning colleges and universities appropriate for particular students as well as the projected cost

16

of attending those colleges and universities." Father presented no countervailing proof concerning this issue.

Based on Ms. Schneider's projections, the trial court determined that E.D. and C.D. would each experience a significant shortfall with regard to college expenses. Although Father had established separate educational accounts for the children, he had ceased contributing to the educational accounts after three years, such that E.D. and C.D. each had approximately $45,000 in saved college funds. Based on Ms. Schneider's projected costs for each child's post-secondary education, the trial court accordingly calculated the amount of Father's necessary contributions in order to properly fund the educational accounts by the time the funds would be needed for college.

In doing so, the trial court considered the parties' testimony regarding the children's personal trusts (formerly UTMA accounts), the intent behind such trusts, and the source of funds contained therein. Although Father testified that the UTMA accounts were intended to be used to pay for the children's college expenses, Mother testified that the intended use of those accounts was to provide a "nest egg" for each child after college for a down payment on a house or to purchase a car. Mother further explained that the majority of the funds in the UTMA accounts came from gifts from her family. Although Father had deposited some funds in the UTMA accounts, he acknowledged that the funds he placed therein were traceable in part to gifts from Mother's family.

With regard to the potential use of the funds in the children's UTMA accounts for payment of college expenses, the trial court found:

> While not explained in its ruling, the facts and circumstances before this Court in 2009 suggest that this Court did not intend for the UTMA accounts to be used to fund the children's college education, in whole or in part. In reaching that conclusion, this Court determined it would have so stated had it been the intention of the Court in 2009 for the UTMA accounts to be used to fund each child's college education, in whole or in part. The Court named [Mother] the sole custodian of UTMA accounts and directed that [Father] be the custodian of the educational trusts to be funded by him. The Court held that the UTMA accounts were funded with monies provided primarily by [Mother's] family during the course of the parties' marriage. There was no stated intent or purpose that the UTMA accounts be used exclusively for the children's college education.
>
> [Mother's] family had gifted money to her prior to the parties' marriage which enabled the parties to purchase their first home, yet [Mother] was provided a private education at Vanderbilt University,

17

presumably by her family, thus preserving her gifted assets for use later in life. This was the model the Court had before it at the time of trial in 2009. The privilege and/or obligation to educate children does not fall on the shoulders of third parties if parents are able to bear the cost which is certainly the case with [Father] and [Mother]. . . .

With knowledge of the foregoing facts in mind, it is this Court's belief that it intended the educational trusts to fund the children's college education without reference to the assets in their UTMA accounts when it made its 2009 decision. While [Father] testified at the trial of these proceedings that funds in the children's UTMA accounts were for the children's college education, [Mother] testified to the contrary. The Court credits [Mother's] testimony.[3]

Based on these factual findings, the trial court concluded that Father would be required to deposit monthly amounts into E.D.'s and C.D.'s educational accounts, of which he was custodian, in order to fully fund their projected college expenses without utilizing the funds contained in their personal trusts. The court therefore determined that the children's separate personal trusts were not and should not be "restricted to provide for the children's education." Upon our thorough review of the evidence, we conclude that this ruling is supported by the proof presented and is consistent with the trial court's earlier orders as well as the mandate of this Court. We accordingly find no error in the trial court's interpretation of its prior orders.

## VI. Protective Order

Father argues that the trial court erred by granting Mother's motion for a protective order regarding discovery requests filed by Father following the remand from this Court. On December 5, 2014, Father transmitted interrogatories and requests for production of documents to Mother, seeking, *inter alia*, information regarding Mother's bank accounts and income. In turn, Mother sought a protective order, arguing that the discovery sought was irrelevant to the issues on remand. On February 2, 2015, the trial court entered an order granting Mother's motion for a protective order, determining the requested information to be irrelevant.

Father posits that the requested information was relevant to issues regarding the children's UTMA and trust accounts and that the requests could have yielded valuable information that would have assisted the trial court in determining the remanded issues. As our Supreme Court has stated concerning this question, "Because decisions regarding

---

[3] We emphasize that the trial court's determinations regarding witness credibility are afforded great weight on appeal. *See Jones*, 92 S.W.3d at 838.

pretrial discovery are inherently discretionary, they are reviewed using the 'abuse of discretion' standard of review." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The High Court further explained:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc.*, 312 S.W.3d at 524-25 (internal citations omitted).

As the trial court explained in its order granting Mother's motion for a protective order, "information and documents related to [Mother's] income and financial assets" were "irrelevant to the issues before the Court on the Remand hearing." The court further noted that the funds in the UTMA accounts were assets belonging to the children and not

19

to Mother. We agree. Any discovery sought regarding Mother's personal assets and income was irrelevant to the limited issues on remand concerning projected college costs and whether the funds in the children's UTMA accounts should be utilized to pay those costs. Although there were a small number of discovery requests that sought information regarding the children's accounts, that information was either provided at trial or accessible to Father. We therefore determine that the trial court did not abuse its discretion in awarding to Mother a protective order under the circumstances presented.

Father further argues that the trial court erred by awarding to Mother attorney's fees incurred in seeking the protective order. We note, however, that the February 2, 2015 order granting Mother's motion did not grant an award of attorney's fees. Although Mother was ultimately awarded $25,000.00 by the trial court in its June 28, 2016 order, "representing reasonable attorney's fees and expenses incurred by [Mother] in connection with the remanded proceedings," we note that Mother's counsel filed an affidavit prior to the court's award seeking fees of over $49,000.00 incurred following remand. In its June 28, 2016 order, the court noted that it was awarding fees to Mother, at least in part, because:

> These remand proceedings were made unduly protracted and complicated, primarily by the conduct of [Father], including but not limited to, requesting discovery from [Mother] which had no relevance, whatsoever; refusing to produce his tax returns, requiring to produce documents concerning the educational trust funds that he had established and his failure to cooperate with his attorney, Mr. Weatherly, to prepare for trial on April 24, 2015, which resulted in Mr. Weatherly withdrawing. . . . [T]he Court finds that [Mother] should be awarded a portion of the attorney's fees and expenses incurred by her in connection with these proceedings in the amount of $25,000.

Importantly, the trial court did not apportion a particular amount of the awarded fees to proceedings involving the motion for protective order; rather, the court awarded $25,000.00 for attorney's fees, which the court found to be a reasonable amount based on the totality of the proceedings following remand.[4] We therefore determine Father's issue with regard to an award of attorney's fees related specifically to the protective order to be without merit.

---

[4] We further note that an appellate court "will normally defer to a trial court's award of attorney's fees unless there is 'a showing of an abuse of [the trial court's] discretion.'" *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002) (quoting *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987)).

VII. Expert Witness Testimony and Fees

Father argues that the trial court erred by allowing Ms. Schneider to testify as an expert and by accepting her projections concerning college expenses, contending that her methods of projection were "bizarre." Father also complains because he was ordered to pay Ms. Schneider's fees for testifying at trial.

The trial court stated in its June 28, 2016 order that Ms. Schneider was "credible and well-qualified to testify concerning colleges and universities appropriate for particular students as well as the projected cost of attending those colleges and universities." The court further noted that Father "did not challenge the accuracy of Ms. Schneider's testimony and the Court finds it credible and reasonable." We agree. Based on our thorough review of the transcript of proceedings following remand, we note that Father's counsel did not object to Ms. Schneider's testimony as an expert in this matter. Moreover, Father presented no countervailing proof regarding Ms. Schneider's credentials, experience, or college cost projections.

This Court has previously stated that "[t]he complaint of the erroneous admission of evidence will not be considered on appeal where no objection was made at the trial." *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989). In addition, as our Supreme Court has explained, "the appellate courts review decisions regarding the qualifications, admissibility, relevancy, and competency of expert testimony using the abuse of discretion standard." *Davis v. McGuigan*, 325 S.W.3d 149, 168 (Tenn. 2010). Father failed to object to Ms. Schneider's testimony during trial and has not demonstrated that the trial court, in relying upon Ms. Schneider's expert testimony concerning college expenses, "(1) appl[ied] an incorrect legal standard, (2) reach[ed] an illogical or unreasonable decision, or (3) bas[ed] its decision on a clearly erroneous assessment of the evidence." *See Lee Med., Inc.*, 312 S.W.3d at 524.

The trial court awarded to Mother $1,237.50 "representing discretionary costs incurred by [Mother] in connection with the testimony of Ms. Janet Schneider." Pursuant to Tennessee Rule of Civil Procedure 54.04, "Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion." Rule 54.04 specifically includes in such allowable costs "reasonable and necessary expert witness fees . . . for trials." Father takes issue with the court's award of Ms. Schneider's fees in this matter.

Concerning the assessment of discretionary costs, this Court has explained:

Pursuant to rule 54.04, trial courts are vested with wide discretion in awarding discretionary costs, and this court will not interfere with such an

award except upon an affirmative showing that the trial court abused its discretion. Generally, trial courts award such costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. The successful party is not, however, automatically entitled to an award of costs. Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs.

*Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) (internal citations omitted).

In the case at bar, Father has not demonstrated that the trial court abused its discretion in assessing the costs against Father that were associated with Ms. Schneider's expert testimony at trial. We therefore affirm the trial court's award of discretionary costs to Mother.

## VIII. Child Support

Father claims that the ordered contributions to the children's educational accounts represent an increase in his monthly child support obligation without the requisite findings supporting such an increase. We disagree.

In a prior decision of this Court, *Halliday v. Halliday*, No. M2011-01892-COA-R3-CV, 2012 WL 7170479, at *10 (Tenn. Ct. App. Dec. 6, 2012), the mechanism of funding educational trusts as an upward deviation in child support was explained as follows:

> An award of child support derived from a proper application of the Guidelines is presumed to be in the best interest of the child. In order for a primary residential parent to successfully seek support in excess of the presumptive amount, the parent "must prove by a preponderance of the evidence that more than this amount is reasonably necessary to provide for the needs of the child." Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b). If the parent proves the need for support in excess of the presumptive amount, the court is to add an appropriate amount as a deviation; the court "may require that sums paid pursuant to this subparagraph be placed in an educational or other trust fund for the benefit of the child." Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(g)2(iii). When making a deviation, the court must make written findings in its order detailing "the amount of support that would

have been ordered under the child support guidelines and a justification for the variance from the guidelines." Tenn. Code Ann. § 36-5-101(e)(1)(A).

1.      Education Trust Fund

Establishing a trust for educational purposes to benefit the child is a "discretionary mechanism" available to the trial court. *Bryan v. Leach*, 85 S.W.3d 136, 153 (Tenn. Ct. App. 2001); *Nash v. Mulle*, 846 S.W.2d 803, 806 (Tenn. 1993). Because deviations from the child support guidelines are discretionary, we review the trial court's decision to deviate upward for an abuse of discretion. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

(Additional internal citations omitted.)

The Child Support Guidelines provide, as relevant hereto:

Application of Statutory Threshold to Child Support Determination.

(i) If the [presumptive child support order] calculated under these rules exceeds the amount specified above for the number of children for whom support is being calculated, then the amount of the [presumptive child support order] shall be limited to the amount specified above for the number of children for whom support is being calculated, absent the rebuttal provided for in [Tenn. Comp. R. & Regs. 1240-02-04-.07(g)(1)].

(ii) If the [primary residential parent] proves the need for support in excess of the amount provided for in [Tenn. Comp. R. & Regs. 1240-02-04-.07(g)(1)], the tribunal shall add an appropriate amount to the [presumptive child support order] of the [alternate residential parent] as a deviation.

(iii) The court may require that sums paid pursuant to this subparagraph be placed in an educational or other trust fund for the benefit of the child.

Tenn. Comp. R. & Regs. 1240-02-04-.07(g)(2).

In the trial court's Final Decree of Divorce, the court adopted Mother's proposed permanent parenting plan and incorporated it into the court's judgment. The court noted that the permanent parenting plan provided for "guideline child support and reflects those modifications or changes in accordance with the Court's Findings of Fact and Conclusions of Law." In the trial court's attached findings and conclusions, the court

23

stated that Father would pay child support of $4,100.00 per month, pursuant to the limitation contained in the Child Support Guidelines. *See* Tenn. Comp. R. & Regs. 1240-02-04-.07(g)(1) (providing that an obligor who earns more than $10,000.00 per month would pay $4,100.00 in child support for three children unless the "[primary residential parent] seeking support in excess of the amount provided by the applicable percentage" proves "by a preponderance of the evidence that more than this amount is reasonably necessary to provide for the needs of the child[ren].").  The court further ordered Father to pay for the children's private school expenses, as well as extracurricular activities not to exceed $500.00 per month per child.  In addition, the court ordered that Father would fund educational trusts for the children in accordance with the Child Support Guidelines and the Supreme Court's decision in *Nash v. Mulle*, 846 S.W.3d 803, 806 (Tenn. 1993).

This Court affirmed the trial court's decision requiring Father to establish separate educational funds for the children as a component of child support in the first appeal. *See Duke I*, at *5.  Accordingly, following remand, the trial court could not alter the requirement that Father establish separate educational funds for the children because this ruling had become the "law of the case."  *See Memphis Pub. Co.*, 975 S.W.2d at 306.  Rather, the trial court was simply directed to examine the amounts ordered to be contributed by Father to the educational accounts.  In doing so, the trial court properly heard evidence regarding the projected costs of the children's college educations as well as Father's income.

When rendering its decision following remand regarding the proper amount of Father's ordered contributions, the trial court projected the costs of E.D.'s and C.D.'s college educations to be $275,000.00 and $300,000.00, respectively.  After subtracting the amount existing in each child's educational account, the court determined that E.D. would have a shortfall of $230,000.00 and C.D. would have a shortfall of $255,000.00.  The court therefore calculated Father's ordered contributions based upon these amounts.

When calculating the amount of Father's ordered contributions to the children's educational funds, the trial court stated:

> Contributions to the educational trusts ordered to be established by this Court, when combined with direct child support obligations and obligations for [Father] to pay the children's private elementary and secondary school education, their medical expenses, and the cost of their extracurricular activities falls within 41% of [Father's] net annual income at the time of the divorce which, when averaged for the years 2005 through 2008, exceeded $1.5 million with an average gross income during those years in excess of $2.2 million.

24

Ergo, the trial court properly considered whether the ordered amounts were still within the percentages imposed by the Child Support Guidelines.

We further note that the proof was undisputed that Father had failed to make the then-existing, court-ordered contributions of $15,000.00 per year for E.D. and C.D. during the years 2012 until the time of trial in 2015, despite the fact that he had not sought a stay of the trial court's order pending appeal. Accordingly, each child's deficit was increased by at least $45,000.00 due to Father's failure to make the requisite contributions. This being the case, Father's monthly contribution as adjudicated by the court was increased by his own actions. We therefore determine Father's argument regarding his child support obligation to be unavailing.

## IX. Amount of Contributions

Father asserts that the trial court erred in its determination regarding the amount of his ordered contributions to the children's educational accounts because the children have pre-existing trusts from which their college expenses could be paid. Father again raises the purported "stipulation" of Mother's counsel in the 2009 Transcript regarding a cap on such costs of $200,000.00. We conclude that all of Father's arguments regarding this issue have been adequately addressed in previous sections of this opinion, such that this issue is also without merit.

## X. Recusal of Trial Court Judge

Father's final issue questions whether the trial court judge erred by failing to recuse himself following Father's recusal motion filed on June 21, 2016. Although Father's motion does appear in the supplemental appellate record, Father failed to ensure that the trial court's subsequent order was included in the record before this Court. It is well settled that "[t]he appellate record provides the boundaries of an appellate court's review." *State v. Smotherman*, 201 S.W.3d 657, 660 (Tenn. 2006). Moreover, "[i]t is the duty of the appellant to prepare an adequate record in order to allow meaningful review on appeal." *Bedford Cty. v. Bialik*, No. M2001-00681-COA-R3-CV, 2002 WL 31039383, at *2 (Tenn. Ct. App. Sept. 12, 2002). Without inclusion of the trial court's order regarding the recusal motion, we cannot review this issue.[5]

## XI. Attorney's Fees on Appeal

Mother seeks an award of attorney's fees incurred in defending this appeal. Mother argues that Father's appeal was frivolous and had no reasonable chance of

---

[5] We note that Father conceded in his reply brief that the order had not been included in the record and stated that he was willing to waive this issue.

success. Frivolous appeals are governed by Tennessee Code Annotated § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Although Father was not successful with regard to the issues he raised, we determine, in our discretion, that Father's appeal was not so devoid of merit as to warrant an award of attorney's fees to Mother. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (citing *Chiozza*, 315 S.W.3d at 493 ("The decision to award damages for the filing of a frivolous appeal [under section 27-1-122] rests solely in the discretion of this Court.")); *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). The discretion to determine whether an appeal is frivolous should be exercised "'sparingly so as not to discourage legitimate appeals.'" *See Eberbach*, 535 S.W.3d at 475 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We therefore deny Mother's request for attorney's fees on appeal.

## XII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Mother's request for an award of attorney's fees on appeal is denied. We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are taxed to the appellant, Harold W. Duke, III.

_____
THOMAS R. FRIERSON, II, JUDGE