W. E. RAHT and J. D. RAHT

*v.*

SOUTHERN RAILWAY COMPANY and the City of
Cleveland, Tennessee.

387 S.W.2d 781.

(*Knoxville,* September Term, 1964.)

Opinion filed March 4, 1965.

486

BELL, WHITSON, PAINTER & WEBB, Cleveland, for appellant and cross-appellee, City of Cleveland.

HALL, HAYNES, LUSK & FOSTER, Chattanooga, for appellee and cross-appellant, Southern Ry. Co.

Mr. Justice White, delivered the opinion of the Court.

This case is here on appeal by both parties now in interest from the action of the chancellor in sustaining in part and overruling in part the demurrer filed by Southern Railway Company.

It is said in the brief filed on behalf of the City of Cleveland that the appeals present many novel questions, upon some of which authority is scant, and upon others, practically non-existent. We have read this entire record with great care and have reviewed with like care, we believe, the exceedingly well prepared and thoroughly researched briefs filed in aid of such appeals, the authorities cited in support thereof, and the decision of the Court of Chancery Appeals of Tennessee, not now in existence, as reported in 50 S.W.2d 72 (1897).

This is a most ancient case. The opinion of the Court of Chancery Appeals refers to hacks, buggies, and waggons. There is in the record in the original case testimony of witnesses who were born in the early 1820s and were active participants in the Civil War, as well as being successful men in business and in the art of politics, being former mayors, commissioners and chiefs of police of the City of Cleveland. This case has lived far beyond the average life expectancy of a lawsuit or has been dead and

abandoned and not revived, for more than sixty years, depending upon the viewpoint adopted.

The original suit was commenced by certain heirs at law of Captain J. E. Raht and was filed originally on February 12, 1896. The bill sought to enforce rights claimed by W. D. Raht, et al., in a certain street in the City of Cleveland which they alleged existed, on which they claimed to own abutting property, and which they averred the defendant, Southern Railway Company, had unlawfully obstructed.

The existence of one of the streets and the right of complainants to the relief sought was resisted by the Railway Company. The City of Cleveland was made a joint defendant for the purpose of requiring it, by judicial process, to open and keep open the crossings of Mill Street and Inman Street, and the unnamed street running from Mill Street to Inman Street in the City of Cleveland.

A joint and several demurrer of the Southern Railway Company and the City of Cleveland was filed and eventually overruled by the chancellor. The defendants then filed their separate answers and prayed to be dismissed. Thereafter, and on December 23, 1896, the City of Cleveland filed a cross-bill against Raht and its co-defendant, Southern Railway Company, but for some reason unexplained in the record, the cross-bill was withdrawn. Upon the proof the chancellor dismissed the bill resulting in an appeal by the complainants to the Court of Chancery Appeals. In that court a long and involved opinion was rendered on October 5, 1897 as aforesaid, which will be noticed hereinafter in this opinion.

An appeal was evidently taken from the action of the Court of Chancery Appeals because the Supreme Court

on November 1, 1898 entered an order affirming and remanding the case, stating:

"It is therefore ordered, adjudged and decreed that Mill Street and Inman Street in the City of Cleveland, Tennessee, as described and located in the decree of the Court of Chancery Appeals, be, and they are hereby declared to be public, streets and highways and defendant Railway Company, its officers and employees are hereby forever prohibited and enjoined from closing or obstructing said street or any part thereof, and they are hereby enjoined and commanded to remove all obstruction heretofore placed or permitted to be placed by them in or upon either of said streets, and they are hereby enjoined and requested to place and keep in proper repair and order according to the requirements of the law the closing of Mill Street over the track of said Railway Company, and to restrain from hereafter obstructing said crossing with their engines or trains or otherwise, * * *."

The Court said further that the

"* * * cause would be remanded to the Chancery Court of Bradley County for such further proceedings as may be necessary or proper, and a certified copy of the decree of the Court of Chancery Appeals, as well as of the decree of this Court will accompany the procedendo."

The procedendo was addressed to the judge of the Chancery Court of Bradley County and commanded that court to

"* * * proceed with the execution of this judgment of our said Supreme Court by such proceedings in your court as shall effectuate the objects of this order to

remand and attain the ends of justice.''

The procedendo was signed by Alex McMillan, Clerk of the Supreme Court at his office in Knoxville.

The record before us fails to show compliance with the procedendo or that any further action was taken by the Chancery Court at Cleveland in connection with this proceeding until September 4, 1962, when a ''Petition for Relief against Contempt'' was filed in the original cause by the City of Cleveland in which the history of the litigation is set out in greater detail than we have related above, but we think that the facts herein recited are sufficient upon which to base the opinion herein.

Exhibit 6 to the petition of the City of Cleveland, is a copy of an agreement, dated the 7th day of May, 1900, by and between the County of Bradley and the City of Cleveland, a municipal corporation, as parties of the first part, and Southern Railway Company, a corporation, the party of the second part. The agreement stated that the County and the City were engaged in building a system of Turnpikes in the general improvement of the roads and streets in the City and that the railroad line of the Railway Company crossed Inman Street at grade east of the depot of the Railway Company in Cleveland, this being the same crossing referred to in the opinion of the Court of Chancery Appeals.

The agreement set out that it was the purpose of the parties to provide for greater safety of the traveling public and that the City and County, therefore, desired to dispense with said grade crossing and to substitute therefor an undergrade crossing and that the Railway, in consideration of the advantages to be by it derived from the change in said crossing, was willing to cooperate in the proposed improvement.

In consideration of the premises and of the construction of the bridge over said Inman Street by the Railway Company, the County and City would, at its own exclusive expense, make all necessary excavations for said undergrade crossing and would grade, pave and drain Inman Street under the tracks of the Railway Company so as to put the surface of the said street fourteen feet below the then grade of the tracks of the Railway Company.

The County and the City gave and granted unto the Railway Company, its successors and assigns, by the agreement, the right of license at all times thereafter to erect and maintain on Inman Street

"* * * all such piers, bents or supports as may be necessary to sustain such bridge of the Railway Company as may be constructed over said Inman Street and to replace, renew, alter, or repair said bridge and supports as often as they be necessary for the safety and convenience of railroad operation on and over said bridge."

The Railway Company then covenanted and agreed that it would, at its own cost and expense, erect masonry abutments therefor and would erect and maintain at the crossing over Inman Street a substantial wooden bridge with a clearance between the bottom of the girders of said bridge and the surface of said Inman Street of at least twelve feet with the proviso that the Railway Company would at any time have the right to remove the said wooden bridge and erect instead a metal structure as the necessity of the Railway Company at said point might require.

The Mayor and Board of Aldermen of the City of Cleveland, being the Honorable C. L. Hardwick, Mayor,

and W. S. Tipton, J. A. Steed, R. J. Cate, J. L. Longly, W. M. Dooly, and J. C. Elrod, the Aldermen of said City, met on July 10, 1900 and approved the agreement with the Railway Company as referred to above. The agreement was executed by C. L. Hardwick, as Mayor of the City of Cleveland, and S. M. Paul, the City Recorder, and by James T. Harle, Chairman of the County of Bradley, and by J. I. Harrison, County Court Clerk. It was also signed by the officials of the Railway Company.

The City of Cleveland in its petition now says that said purported agreement was from its inception and is now ultra vires and void for the reason that the Mayor and Board of Aldermen lacked the power to barter away the rights of the public in its streets, which are held in trust for the public use and further that they lacked the power to bind the City to a perpetual contract of any nature. It is further stated that the agreement was merely an attempt by the then incumbent Board of Aldermen and Mayor and the Railway Company to evade the decrees and injunctions aforesaid, and was itself a violation of such decrees and injunctions, and is unenforceable for other reasons set out in the petition.

The prayer of the petition was that the chancellor fix a time for the Railway Company to show cause why the aforementioned decrees and injunctions should not be enforced against it and why it should not be held and adjudged to be in contempt, and if necessary that a writ of distringas or sequestration against the property of the defendant and all other proper process in aid of the enforcement of said decrees and injunctions be issued by order of the court.

Being unsuccessful in its efforts to transfer this proceeding for contempt to the local federal district court,

Southern Railway Company filed a demurrer of two grounds with several subheadings under each. Ground I (a) states:

"The petition shows on its face that the injunctions which this defendant is alleged to have violated were issued by the Court of Chancery Appeals and the Supreme Court, and this court is without jurisdiction to punish for contempt of the Supreme Court or the Court of Chancery Appeals."

Ground I(b) provides:

"The petition shows on its face that said injunctions were obtained at the suit of and for the benefit of complainants, W. E. Raht and J. D. Raht and not of petitioner; that petitioner was a defendant to the original suit * * *; that the suit is based upon transactions occurring subsequent to the issuance of said injunctions, and that the subject matter of this suit would require an additional suit, instead of a citation for contempt."

The chancellor sustained Ground I of the demurrer in its entirety.

By Ground II(a) the Railway Company said:

"The petition shows on its face that the injunctions issued by the Court of Chancery Appeals and the Supreme Court relate to Mill Street and Inman Street 'as described and located in the decree of the Court of Chancery Appeals,' and the description contained in the decree of the Court of Chancery Appeals describes only (1) 'Mill Street as located or shown on the City map filed in the record,' * * *."

Subheading (b) relates to the width of Inman Street at its crossing with defendant's railroad and the injunction did not prohibit the building by this defendant of the railway bridge at the crossing of Inman Street.

Subheading (c) contends that the reason for the construction of said underpass was to improve the street for the greater safety of the traveling public as it was the desire "to dispense with said grade crossing over the right of way and track of the railway company and to substitute therefor an undergrade crossing," said crossing being constructed in accordance with the aforesaid agreement of the parties and that such improvement did not constitute a violation of either the letter or the spirit of the injunctions.

Subheading (d) contends that the acts of the Railway Company were merely an adaptation to a change in Inman Street made by the City and by the County and did not relate to a situation existing at the time of the issuance of said injunctions and were not in violation of the letter or the spirit thereof.

Under Subheading (e) it is contended that the petition for contempt shows on its face that the alleged deficiency of the bridge and the width for vehicular traffic has arisen from "the increase in population and vehicular traffic" since the issuance of said injunctions and the construction of said bridge.

Subheading (f) contends that this proceeding is an indirect attempt to compel the Railway Company to construct a new and larger bridge at said Inman Street crossing and that the City should be required to seek relief in a direct suit therefor, if it is entitled to such relief at all.

Subheadings (g), (h), (i), and (j) relate to the alleged effort of the City to compel the Railway Company to replace the bridge; that the City acquired no right or interest by virtue of said injunctions; and that the petitioner's right to bring this proceeding is barred by the statute of limitations of ten years, as provided for in T.C.A. sec. 28-310, and twelve months as provided for in T.C.A. sec. 40-204.

The last and final subheading of Ground II of the demurrer states in substance that it would be inequitable to grant the relief sought because such relief at this time is barred by the doctrines of estoppel, laches, and waiver, and that the petitioner comes into court with unclean hands.

Upon consideration of the petition and the demurrer the chancellor filed a memorandum opinion in which he held:

"'* * * in order to give the Chancery Court of Bradley County such power [the power to punish for the violation of said injunction] it would have been necessary that said Court implement the decree of the Supreme Court by a decree of said lower court to the extent of an injunction emanating from said Chancery Court of Bradley County in said cause.

"'* * * Upon the receipt of the procedendo the lower court [the Chancery Court of Bradley County] could have made such orders deemed necessary and proper not inconsistent with the decree of the Appellate Court. Since no decree of injunction was made by the Chancery Court of Bradley County, there existed no writ from such Court against which the alleged violation was committed.''

The court then sustained Ground I(a) and (b) of the demurrer and said that counsel for petitioner in his brief contended:

" 'The City's Petition may be considered an original bill, if the Railway insists upon an original bill.' It is argued that the petition has all the requisites of an original bill. However, the Court is inclined to the view that the theory of the petition is that the ultimate punishment for violation of the injunction should result from a final adjudication of the issues of said petition. It would seem to the Court that different allegations should appear in an original suit or by way of amendment to the petition."

The court then held that the same reasoning applied to Ground II(d), (f) and (h) and sustained such grounds. All other grounds of the demurrer were overruled.

The petition was dismissed and from this action adverse to the City of Cleveland it appealed, and from the action of the chancellor adverse to Southern Railway Company it appealed. Numerous errors have been assigned and briefs in support thereof have been filed as indicated above.

While the issues raised by the parties are numerous our investigation has convinced us the real points to be decided are rather narrow. Did this Court lose jurisdiction when the procedendo was sent to the Chancery Court in accordance with the remand?; and, secondly, did the Chancery Court act in accordance with the remand?

The remand in part was that the Railway Company would be allowed sixty days in which to comply with the terms of the decree of the Supreme Court by removing the obstructions placed in said street and by the proper

repair of the Mill Street crossing. The opinion provided further:

"This case will be remanded to the Chancery Court of Bradley County for such further proceedings as may be necessary or proper."

Procedendo in the usual form was issued by the Clerk of this Court to the Chancery Court of Bradley County in 1898. As indicated above, the record shows no further proceedings in the Chancery Court until the filing of the petition herein, almost sixty-four years from the date of the order of remand.

Why did Raht fail to pursue and enforce his right in Chancery which had been won at the end of protracted litigation?

■■■ Gibson's Suits in Chancery sec. 708 (5th ed. 1955) sets out the usual and accepted procedure to be followed by the Chancery Court upon a remand of a cause from the Supreme Court. The first step is to offer the procedendo remanding the cause and the accompanying degree of the Supreme Court, and to move the court to have them spread on the Minutes, and the cause re-entered on the docket. When a remanded cause has thus been re-entered on the docket, it stands exactly as it did when the appeal was granted, except insofar as changed by the decree of the Supreme Court. The decree of the chancellor appealed from and the erroneous orders and rulings of the chancellor excepted to before or at the hearing are affirmed, modified or annulled, as required by the decree of remandment.

■■ Where any act or omission of the chancellor is corrected by the Supreme Court on remandment of the

cause, the decree of the Supreme Court will, in all respects, be carefully complied with.

■ The procedure on remandment as outlined above is considered to be proper and is followed generally although it was made unnecessary by Chapter 10 of the Public Acts of 1901, now T.C.A. sec. 21-1217, which provides that it shall not be necessary for the decree or mandate of the appellate court to be spread of record in the lower court, by direction of the lower court, before the clerk or the parties may proceed in said cause in accordance with the decree or mandate of the appellate court.

It will be observed that the remand in the case *sub judice* is dated December 5, 1898, more than two years prior to the enactment of Chapter 10 of the Public Acts of 1901 aforesaid.

■ It is our view that the remand was for the purpose of directing the lower court to issue such orders as might be necessary to make effective there the injunctions of the Supreme Court and the jurisdiction of the Supreme Court over the cause was thus ended unless, of course, the Chancery Court refused to abide by the mandate. In that event, the writ of mandamus would no doubt have been available to the complainants. 3 Am.Jur. Appeal and Error sec. 1232 (1936).

■ As the record now stands the Chancery Court of Bradley County never accepted the reinvestment of the cause as ordered by the Supreme Court and, of course, never issued the mandatory and perpetual injunctions. Said court had reacquired the jurisdiction which it lost by the review proceedings. 3 Am.Jur. Appeal and Error sec. 1229 (1936).

The City, in its brief, makes the statement that this is the first time that this Court

"* * * has ever been directly confronted with the precise question presented by Ground I(a) of the demurrer, viz.: the effect of an order of remand and procedendo as ousting an appellate court of jurisdiction to enforce a decree entered by it in a cause and investing that jurisdiction in the trial court."

■ The chancellor sustained Ground I(a) of the demurrer upon the theory that his court had no power to enforce the injunctions issued by the Supreme Court since one tribunal may not punish for contempt of another. We think that this is a correct statement of the law, but it does not follow that the Chancery Court initially was not obligated to carry into effect the orders of this Court. As shown by the record, the Chancery Court did nothing upon remand, nor was it requested to take any action by any of the parties.

It is the general rule in other jurisdictions that a remand, order or writ issued by an appellate tribunal returns the proceedings to the lower court and reinvests it with jurisdiction thereof. 5B C.J.S. Appeal and Error secs. 1958, 1965 (1958); 3 Am.Jur. Appeal and Error secs. 1229, 1233 (1936).

The same encyclopedias support the general proposition that it is, of course, necessary that the procedendo be transmitted to the lower court and filed therein, but it is not necessary that the lower court issue any further process of its own.

The procedure in this State has always been as outlined in Gibson's above, except when changed by Chapter 10 of the Public Acts of 1901, now T.C.A. sec. 21-1217, aforesaid.

The order of remand was that the Court

"* * * proceed with the execution of this judgment of our said Supreme Court by such further proceedings in your court as shall effectuate the objects of this order to remand and attain the ends of justice * * *."

Under the procedure then in effect, it was necessary for the Chancery Court to have followed generally what is now sec. 708 of Gibson's aforesaid, and failing in this, it was the duty of the parties to take appropriate action. The complainants, Raht, failed to take any action to enforce the order of remand and, upon reflection, it seems clear to us that they were satisfied with their victory which no doubt induced the original co-defendants, the City and the Railway Company, to provide for a safe and permanent crossing for them. The record supports such a conclusion since it shows that the City and the Railway Company, joined by the County, entered into an agreement whereby the City would pay the costs of lowering the subject street, and the building of a bridge or overpass over the street at the cost of the Railway Company. This was more relief than the complainants had originally desired. Originally they wanted an unobstructed grade crossing. The end result was that they were provided with an underpass which, at the time, was of ample dimensions to provide adequately for vehicular traffic of the day; that is, hacks, buggies and wagons, as mentioned in the proof.

We can only conclude from this unusual record that the Rahts abandoned this proceeding after they had obtained more relief than they had originally prayed for in their bill and we do not see how legal life can be breathed into something that never existed in the Chancery Court and ceased to exist in this Court after the remand.

 The Rahts commenced this lawsuit and it has been said in a Latin phrase, unnecessary to quote, that anyone may renounce a right introduced for his own benefit. *Johnson v. Cooper,* 10 Tenn. 524, 533 (1831).

If there were others who had an interest in furthering this litigation, they should have acted in 1898 to make effective the mandate of this Court. It must be remembered that the City withdrew a cross-bill that it had filed in the original cause, without explanation. This leads to a conclusion, logical in our minds, that the City had no interest in prosecuting this case at that time.

 We think the foundation of the lawsuit was removed when the Rahts failed to pursue the then accepted practice of making effective the mandate of this Court. There are maxims of equity to the effect that the reward is to the swift and that equity serves the vigilant, etc. Of course, these well understood maxims applied to the Cleveland city officials in 1898, but they did not heed them.

Finally, it is our opinion that this Court lost jurisdiction of the case after the order of remand and procedendo thereon. Clearly the Chancery Court of Bradley County failed to act on the remand or make the order of this Court effective for the apparent reason that the complainants lost interest in the cause for the reasons hereinabove indicated.

We think the chancellor was correct in sustaining Ground I(a) of the demurrer and since this is so, we find it unnecessary to pass upon the other grounds and the assignments of error made in connection with the appeals by both parties herein. Therefore, our consideration has

been directed only to Ground I(a) of the demurrer which we think the chancellor was correct in sustaining.

The costs of this appeal will be borne equally by the City of Cleveland and the Southern Railway Company. Affirmed.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.