# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 3, 2019 Session

## CHARLES STINSON, ET AL. v. DAVID E. MENSEL, ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 12-CV-4872     Deanna Johnson, Chancellor**

_____

### No. M2017-02497-COA-R3-CV

_____

Charles Stinson and Glenda Stinson ("the Stinsons") appeal the November 17, 2017 order of the Chancery Court for Hickman County ("the Trial Court") expanding the injunctive relief granted in our Opinion in *Stinson v. Mensel*, No. M2016-00624-COA-R3-CV, 2017 WL 2972219 (Tenn. Ct. App. July 12, 2017), *no appl. perm. appeal filed*. We find and hold that the Trial Court lacked the authority to modify or revise the injunction entered by this Court in the first appeal of this case. We, therefore, vacate the portion of the Trial Court's November 17, 2017 order modifying the injunction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

E. Covington Johnston, Jr., Franklin, Tennessee, for the appellants, Charles Stinson and Glenda Stinson.

Allston Vander Horst, Centerville, Tennessee, for the appellees, David E. Mensel, Mary Ford (Anne) Mensel, Michael Sabol, and Christine A. Sabol.

# OPINION

## Background

This is the second time this case has been before us on appeal. This Court issued its Opinion in the first appeal in July of 2017. *Stinson v. Mensel*, No. M2016-00624-COA-R3-CV, 2017 WL 2972219 (Tenn. Ct. App. July 12, 2017), *no appl. perm. appeal filed* ("*Stinson I*"). By way of background, we quote liberally from our Opinion in *Stinson I*:

> Appellants, Charles Stinson and his wife, Glenda Stinson (collectively "the Stinsons") initiated this litigation against their neighbors, Appellees, David E. Mensel and his wife Mary F. Mensel (collectively "the Mensels") and Michael Sabol and his wife, Christine Sabol (collectively "the Sabols") on October 25, 2012. The Stinsons own land in Hickman County, Tennessee and have a home on that land. The Stinsons' land is subject to an easement, which is a 50-foot non-exclusive easement for utilities and for ingress and egress to certain neighboring properties (the "Easement"). The deed attached to the Stinsons' complaint indicates that the Stinsons' property line is the center line of the Easement. The Mensels and the Sabols live on land accessed by the Easement and use a road built on the Easement as the driveway to their homes. This road/driveway within the Easement is known as Captain Spence Ridge Road. The Stinsons do not actually use Captain Spence Ridge Road as the driveway to their home. Captain Spence Ridge Road was built so that it is in the center of the Easement. The original width of Captain Spence Ridge Road was approximately eight feet wide, but it has been widened over the years. The widened road is still within the boundaries of the Easement. Many of the landowners who use the Easement are parties to a certain contract that governs their respective responsibilities regarding the maintenance and improvements to the road within the Easement (the "Driveway Maintenance Agreement"). The Stinsons and their predecessors in interest chose not to enter into the Driveway Maintenance Agreement.

> The controversy in this case appears to have begun in December 2008, when Mr. Stinson came to believe that the Sabols had stolen some of his chickens that wandered over to the Sabol property. Mrs. Sabol received a handwritten letter from Mr. Stinson in her mailbox stating the following:

> > Your [sic] a theft [sic]. My checken [sic] have made it over to your house. You never came and told me so you caught

2

them and keep [sic] them now I'm pisst [sic]. Your [sic] not
a good neighbor and your [sic] on my [s—t] list.

Apparently angry over the chicken incident, the Stinsons thereafter began to harass the Sabols and the Mensels. The Stinsons' behavior that followed ranged from petty to outright dangerous. Mr. Stinson began to constantly put things in or around Captain Spence Ridge Road and otherwise within the Easement. He placed debris in the Easement on several occasions, as well as fence posts that were apparently designed to keep people from driving on the Easement. When the Mensels attempted to put survey tape on the posts to warn their houseguests of the presence of the posts, Mr. Stinson promptly removed the tape. Mr. Stinson also dug a ditch in the roadway that required drivers to drive more on the Sabols' side of the road. Then, when a flood came in May 2010, the ditch forced unusually high water and mud down the driveway, resulting in a considerable amount of erosion.

There were also numerous altercations and screaming matches between the Stinsons and the Defendants. The police were called on several occasions. When the Mensels went to speak with Mr. Stinson about removing the fence posts, Mr. Stinson said that he had been to the courthouse and had taken steps to reduce the size of the Easement. This was not true. During the discussion, Mr. Stinson became loud, threatening and intimidating. Mr. Stinson was often described during the trial as aggressive and hostile. In 2009, Mr. Sabol was clearing weeds on Captain Spence Ridge Road when Mr. Stinson became angry and told him he could not remove the weeds. Mr. Stinson then cut brush and left the brush on Captain Spence Ridge Road. He subsequently erected a sign telling the Sabols to stay on their side of the Easement. Those passing through the Easement would routinely have to drive around the brush put in place by Mr. Stinson in order to prevent it from scraping their vehicles. Mr. Sabol frequently removed the brush, and Mr. Stinson would replace it. On one occasion, Mr. Mensel was working on the Easement when Mr. Stinson attempted to call out to him and talk to him. Mr. Mensel was wearing protective earmuffs and could not hear Mr. Stinson. Mr. Stinson apparently thought Mr. Mensel was intentionally ignoring him, so Mr. Stinson picked up a large rock and began following Mr. Mensel down the road. The situation was eventually diffused when Mr. Sabol stepped out into the road so that Mr. Stinson could note his presence. Shortly thereafter, Mrs. Stinson arrived at the Sabols' home and began to verbally accost Mrs. Sabol.

More chaos followed. Mr. Stinson continued his antics of throwing brush onto the Easement, and at one point Mrs. Stinson went so far as to throw her body in front of a bulldozer that the Mensels had hired to grade the Easement. The police were called again and again. These theatrics culminated in a lawsuit filed by the Stinsons against the Mensels and Sabols. On October 25, 2012, the Stinsons filed a complaint against the Mensels and Sabols claiming that they had caused the easement to be graded and bulldozed, encroached onto the Stinsons' property, and made verbal threats and used intimidation in order to prevent the Stinsons from coming onto or using the easement. The Mensels and Sabols filed an answer and counter-complaint on December 19, 2012. They denied making any threats or intimidating the Stinsons and alleged that the opposite was actually true.

The case was tried before a judge sitting without a jury on August 10 and 11, 2015. On January 6, 2016, the trial court entered an extensive memorandum and order dismissing all of the Stinsons' claims against the Sabols and Mensels and holding the Stinsons liable to the Sabols and Mensels for nuisance, invasion of privacy, and intentional infliction of emotional distress. The court further enjoined the Stinsons from forever "using, driving on, damaging, or interfering with Captain Spence Ridge Road, or the maintenance of the same," and from harassing the Mensels and Sabols. On February 5, 2016, the Stinsons filed a motion to alter or amend the trial court's judgment, alleging error in some of the court's factual and legal conclusions, as well as asserting that the trial court was "without authority to virtually divest the Plaintiffs from the ability to use or be upon their property that is part of the subject easement." The Mensels and Sabols also filed a post-judgment motion to clarify and amend the trial court's January 6, 2016 order, but only to generally correct a misspelling and some other inadvertent errors. On February 25, 2016, the trial court approved the corrections suggested by the Mensels and Sabols and entered an amended memorandum and order, which republished the original order with the changes incorporated. On March 6, 2016 the trial court denied the Stinsons' motion to alter or amend. The Stinsons timely appealed the trial court's judgment to this Court.

*Stinson I*, 2017 WL 2972219, at \*\*1-2.

In *Stinson I*, this Court affirmed the Trial Court's judgment "that the Stinsons are liable to the Mensels and Sabols for nuisance," reversed the Trial Court's judgment that

4

the Stinsons had committed the tort of invasion of privacy, reversed the Trial Court's judgment that the Stinsons were liable for intentional infliction of emotional distress, and vacated a portion of the Trial Court's injunction. *Stinson I*, 2017 WL 2972219, at *5. Specifically, with respect to the Trial Court's injunction, this Court found and held:

> To be clear, the Stinsons' decision to not enter into the Driveway Maintenance Agreement does not curb their interest in the property or their ability to lawfully use and maintain the Easement. By the same token, the Stinsons cannot prohibit the dominant tenements from coming upon or making repairs to the Easement that are reasonably necessary for its express use.

\* \* \*

> After finding that the Stinsons are liable to the Mensels and Sabols for nuisance, invasion of privacy, and intentional infliction of emotional distress, the trial court imposed the following injunction:

>> [T]he Stinsons are forever prohibited from coming onto, using, driving on, damaging, or interfering with Captain Spence Ridge Road for the entire 50-foot width of the easement, or the maintenance of same. The Stinsons are also enjoined from harassing the Mensels and Sabols, or interfering with their personal enjoyment of Captain Spence Ridge Road. Any reference in this Order to Captain Spence Ridge Road is a reference to the entire 50-foot wide easement known as Captain Spence Ridge Road.

> Portions of this injunction essentially divest the Stinsons of any use or interest in their property that is subject to the Easement, prohibiting even lawful activity thereon. "Injunctions, however, are drastic remedies that should be used only if no other adequate relief is available." *West v. Luna*, No. 01A01–9707–CH–00281, 1998 WL 467106, at *5-6 (Tenn. Ct. App. Aug. 12, 1998) (citing *Butts v. City of South Fulton*, 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977). In general, "[i]njunctions will not issue merely to relieve the fears or apprehensions of an applicant." *Wallace v. Andersonville Docks, Inc.*, 489 S.W.2d 532, 535 (Tenn. Ct. App. 1972) (internal citations omitted). "They should be used sparingly if the nuisance is being created by an otherwise lawful activity, and they should be limited to the acts causing the nuisance." *West*, 1998 WL 467106, at *5-6.

Easement rights are not so great that they completely deprive the owner of the servient estate of any use or enjoyment of his or her property.

> The rights of neither party are "absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate." *Carroll v. Belcher*, 1999 WL 58597, at *1 (Tenn. Ct. App. Feb.9, 1999) (quoting 10 TENNESSEE JURISPRUDENCE, Easements § 6 (1994)). The rights of each party must be examined in the context of the entire situation and should be balanced so as to protect the rightful use by each party of his or her interest. *Rogers v. Roach*, No. M2011–00794–COA–R3–CV, 2012 WL 2337616, at *8-9 (Tenn. Ct. App. June 19, 2012).

> It is well settled that, because an easement is limited to the purposes for which it was created, an owner of an easement "cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Adams v. Winnett*, 156 S.W.2d at 357 (quoting 17 AM. JUR. 996, sec.98); *Shew v. Baugus*, 227 S.W.3d [569, 576–77 (Tenn. Ct. App. Feb. 20, 2007) ].

> ....

> The owners of the land under and surrounding an easement, the servient estate, while he may use his property in any manner consistent with the existence of the easement, ... cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with and has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Charles v. Latham*, No. E2003–00852–COA–R3–CV, 2004 WL 1898261 (Tenn. Ct. App. Aug. 25, 2004)(citing *Cooper v. Polos*, 898 S.W.2d 237, 242 (Tenn. Ct. App. 1995)). *See also* 28A C.J.S. *Easements* § 175 (1996).

*Keenan v. Fodor*, No. M2012–00330–COA–R3–CV, 2014 WL 793713, at *7 (Tenn. Ct. App. 2014).

To the extent the trial court issued an injunction that prohibits the Stinsons from accessing property they own, albeit servient to the Easement, such an injunction was improper. The Stinsons cannot be "forever prohibited from coming onto, using, [or] driving on" property they own. Since a portion of their property is, in fact, a servient estate, they can be enjoined from damaging or interfering with the Easement, including the use or maintenance of the Easement. Accordingly, we vacate the trial court's injunction with respect to the Stinsons' access and use of the servient estate.

*Stinson I*, 2017 WL 2972219, at *4, **8-9.

While the appeal in *Stinson I* was pending before this Court, the Mensels and Sabols filed a petition for criminal contempt seeking, among other things, to have the Stinsons held in contempt for allegedly violating the Trial Court's injunction. After this Court entered its Order in *Stinson I*, the Mensels and Sabols filed another motion seeking to amend their motion for criminal contempt requesting "appropriate relief . . . be fashioned to protect the Mensels and Sabols from what the Court of Appeals found as Stinson's '. . . acts causing nuisance.'" The Mensels and Sabols withdrew the contempt charges but sought to have the Trial Court enter a new permanent injunction.

A hearing was held on Defendants' motion, and the Trial Court heard testimony. David Mensel testified that since the Trial Court entered its February 25, 2016 order that there were "primarily petty, instances of brush piles along the roadway, of stringing up surveyor's tape, just things that were ugly." Mr. Mensel testified that a few months earlier someone had shot his daughter's cat. Mr. Mensel also testified about things that happened after the trial but before the Trial Court entered its February 25, 2016 order. Christine Ann Sabol testified that since the trial she has not been harassed, but she stated that her husband has. Michael Sabol testified that he has seen Mr. Stinson walking in the woods on his own side of the property and looking in the direction of the house of the Mensel's daughter. Mary Ford Mensel testified: "I don't think [Mr. Stinson] is going to physically harm [my daughter]. I don't think he is going to do that, but I know you can't back down to a bully." Ms. Mensel testified that Mr. Stinson has not suddenly appeared out of nowhere on the easement since the "last court date." She agreed: "There has been considerable improvement" in the situation. Ms. Mensel also stated:

I would like to think that the Stinsons would like to put this behind them as much as we want to put it behind us. I would like to think that they would not use this as a way to continue harassing us. I just would like to think that they are that good of people that they would try to do that. I know particularly [Ms. Stinson] will not harass me.

7

Charles E. Stinson denied shooting the Mensels' daughter's cat and claimed he has not shot a gun since the trial. He testified that when he was in the woods he was looking at cameras that the Defendants had installed, not at the Mensels' daughter's house.

After the hearing, the Trial Court entered its order on November 17, 2017 finding and holding, *inter alia*:

> The parties further came before the court upon the request of the Mensels and Sabols to review the Court's February 25, 2016 Amended Order in light of the Court of Appeals Order of July 12, 2017, and to determine what relief, if any, is still part of the court's original Order and what additional remedies should be imposed, if any, to protect the Mensels and Sabols from the clear nuisance of the Stinsons, which nuisance was upheld by the Court of Appeals. David E. Mensel and Mary Ford (Anne) Mensel, Michael Sabol and Christine A. Sabol, and Charles Stinson all testified.

> * * *

> Based on the entire record in this matter, including the Court of Appeals Order, the Stinsons' Motion to Dismiss, and the testimony of witnesses, the Court finds that the Mensels and Sabols are entitled to the following injunctive relief.

> The Court permanently enjoins the Stinsons from directly or indirectly harassing, intimidating, threatening, intentionally disturbing or annoying, confronting, threatening, cursing, stalking, or intentionally following Mensels and Sabols and are further enjoined from disturbing their quiet and peaceful enjoyment and use of Captain Spence Ridge Road and their property on Captain Spence Ridge Road. The Stinsons are permanently enjoined from harming or damaging any of the Mensels' and Sabols' pets, vehicles or other personal or real property. The Stinsons are further enjoined from interfering with or damaging Captain Spence Ridge Road. They are further permanently enjoined from intentionally creating noxious smells, defacing or trashing said easement, or endangering or impeding travelers on the easement by placement of trees, limbs, rocks, brush, eggs, dead animals or any other objects whether on Captain Spence Ridge Road or on any other part of the 50-foot easement for the purpose of harassing the Mensels and Sabols. The Stinsons are further enjoined from interfering with the Mensels and Sabols and their agents maintenance of Captain Spence Ridge Road including that part of the easement within 15

8

feet from the center of the roadway which the court finds is appropriate in order that the roadway itself can be maintained. Said maintenance shall include but not be limited to the Mensels' and Sabols', and their agents', right to mow, weed eat, remove rocks, or eyesores intentionally placed by the Stinsons. The Mensels and Sabols shall have a right to repair, maintain and improve the roadway in order for the Mensels and Sabols to keep Captain Spence Ridge Road as a functional year round easement.

Because of the overwhelming evidence in the record of the Stinsons' nuisance, much of it evidenced by their intentional damage and obstruction to the Captain Spence Ridge Roadway, as partially identified by the Court of Appeals, and because they have never done anything to "maintain" or improve said roadway, but have committed many acts to damage it, the Stinsons are hereby permanently enjoined from the "maintenance", improvement or repair of the Captain Spence Ridge Roadway or the land within 15 feet from the center of the roadway. The Stinsons are further permanently enjoined from doing anything on or in relationship to the roadway that would alter or interfere with its present width, condition, or use, whether temporarily or permanently.

The Stinsons appeal the Trial Court's November 17, 2017 order to this Court.

## **Discussion**

The Stinsons raise three issues on appeal, which we quote:

1. The Trial Court erred in significantly expanding the injunctive relief against the Plaintiffs on remand by permanently enjoining the Plaintiffs-Stinsons, directly or indirectly, harassing, intentionally threatening, intentionally disturbing or annoying, confronting, threatening, cursing, stalking, or intentionally following the Mensels and Sabols, harming or damaging any of the Mensels' pets, vehicles, or other personal or real property, interfering with or damaging Captain Spence Ridge Road, intentionally creating noxious smells, defacing or trashing easement, and endangering or impeding travelers on the easement by placement of trees, limbs, rocks, brush, eggs, dead animals on the easement.
2. The Court erred in permanently enjoining the Plaintiffs from the maintenance, improvement or repair of the Captain Spence Ridge Roadway, or the land within fifteen (15') feet from the center of the roadway.

3. The Court erred in ordering the Plaintiffs to pay damages and costs of the original trial previously ordered by the Trial Court.

The first two issues concern the Trial Court's ordering additional injunctive relief against the Stinsons. In their brief on appeal, the Mensels and Sabols argue that this Court remanded the case to the Trial Court in *Stinson I*, and that "[o]nce an Appellate Court remands a case to the trial court, the trial court has every right to hold hearings and enter orders and when appropriate, 'enlarge relief', provided there is a factual and legal basis for that relief, and that it does not violate or undermine the Appellate Court's holding in its remand Order of July 12, 2017."

To begin, the Mensels and Sabols are incorrect in their assertion that this Court remanded this case to the Trial Court for further proceedings. In *Stinson I*, this Court remanded the case to the Trial Court solely for collection of the costs below. We did not remand the case for any further proceedings or determinations by the Trial Court beyond collection of the costs.

Additionally, the Trial Court lacked the power to change in any manner this Court's injunction. To do so would undermine our Opinion, a situation this Court discussed in *Duke v. Duke* stating:

[T]he trial court had a duty not only to effectuate its own prior orders but also to effectuate this Court's decision upon remand. As this Court has previously explained:

After a case has been appealed, a trial court does not reacquire jurisdiction over the case until it receives a mandate from the appellate court. Once the mandate reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. *Raht v. Southern Ry.*, 215 Tenn. 485, 497, 387 S.W.2d 781, 786 (1965). The appellate court's opinion becomes the law of the case, *Gill v. Godwin*, 59 Tenn. App. 582, 786, 442 S.W.2d 661, 662-63 (1967), foreclosing and excluding any complaint, constitutional or otherwise, as to the issues addressed and decided in the appellate court's opinion. *Cook v. McCullough*, 735 S.W.2d 464, 469 (Tenn. Ct. App. 1987). Thus, the trial court does not have the authority to modify or revise the appellate court's opinion, *McDade v. McDade*, 487 S.W.2d 659, 663 (Tenn. Ct. App. 1972), or to

10

expand the proceedings beyond the remand order. *Cook v. McCullough*, 735 S.W.2d at 470. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion. *Raht v. Southern Ry.*, 215 Tenn. at 497-98, 387 S.W.2d at 786-87.

*Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 WL 504905, at *3 (Tenn. Ct. App. May 14, 2001). Furthermore, as our Supreme Court has elucidated:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 Am. Jur. 2d Appellate Review § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. App. 1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939 S.W.2d at 90 (citing other authority).

*Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998).

*Duke v. Duke*, 563 S.W.3d 885, 895-96 (Tenn. Ct. App. 2018). The Trial Court had no authority on the remand, which was limited to collection of costs below, to modify or revise the injunction we entered in *Stinson I*.

Furthermore, in the case now before us on appeal, there was no factual and legal basis for granting additional relief. The facts presented at the hearing were substantially the same as those that had been presented at the trial of this case except that things had gotten better. As discussed above, there was insufficient evidence of acts that occurred since entry of the Trial Court's February 25, 2016 order sufficient to justify and support an order for further injunctive relief. Rather, the proof offered at the hearing shows that there has been "considerable improvement" and that any incidents have been "primarily

11

petty." This evidence is wholly insufficient to support the additional injunctive relief granted by the Trial Court.

Additionally, this Court quite specifically found and held in *Stinson I* that an injunction that prohibited the Stinsons from accessing property that they own was improper. Yet that is what the Trial Court's new injunction entered in its November 17, 2017 order attempts again to do. We are not unmindful of the anguish that the Mensels and Sabols have suffered as a result of the actions of the Stinsons, but an injunction prohibiting the Stinsons from accessing their own property is legally untenable. We note that the behavior of the Stinsons prior to trial, although characterized by Mr. Stinson as 'maintenance' of the easement, was clearly destructive to the easement and that such behavior in the future is prohibited under our injunction. In our injunction the Stinsons are expressly prohibited from damaging the easement or interfering with the other parties' right to use and maintain the easement. Should the Stinsons decide in the future to expend time and money engaging in lawful maintenance of the easement they have the right to do so. The record on appeal, however, reveals that in the past the Stinsons never have expended time or money maintaining the easement.

We express our considered hope that in the future these neighbors will learn to coexist in harmony and that the actions of the Stinsons that led to our upholding the Trial Court's judgment that the Stinsons were liable to the Mensels and Sabols for nuisance will not be repeated. We wish to point out that our Opinion does not prevent the Mensels and Sabols from ever obtaining further injunctive relief if the facts then justify it. What our Opinion does do is prohibit the Trial Court's modifying our injunction. If, in the future, the Mensels and Sabols believe they have new grounds to support further injunctive relief, they are free to file an action for such relief based upon the new facts and circumstances.

As the Trial Court lacked the power on remand to modify, revise, or change in any way our injunction, we vacate the injunction entered by the Trial Court in its November 17, 2017 order and reinstate the injunction from our Opinion in *Stinson I*.

Having addressed the first two issues, we turn to the third issue raised on appeal, whether: "The Court erred in ordering the Plaintiffs to pay damages and costs of the original trial previously ordered by the Trial Court." With regard to this issue, in its November 17, 2017 order, the Trial Court found and held:

> The Stinsons asked that the costs and damages that were assessed against them by the Trial Court be evenly split as it had been by the Court of Appeals with the Appellate costs. The court finds that the two situations are entirely different. At trial the Stinsons as Plaintiffs did not prevail on

any issue presented in their Complaint. Further, they were not entitled to recover the expense of their surveyor because the Stinsons' surveyor's expert opinion agreed with the Mensels' and Sabols' surveyor, and was contrary to the apparent position the Stinsons personally took. The Mensels and Sabols prevailed in their Nuisance action which was upheld by the Court of Appeals, even if the remedies for that Nuisance were curtailed by the Court of Appeals. Therefore, the Stinsons' request is denied.

Pursuant to Tenn. R. Civ. P. 54.04: "Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion." Tenn. R. Civ. P. 54.04(2). We agree with the Trial Court's stated rational for denying the Stinsons' request and find no abuse of discretion. We, therefore, affirm this portion of the Trial Court's November 17, 2017 order.

## Conclusion

The judgment of the Trial Court is vacated as to the injunction entered by the Trial Court and affirmed as to the remainder of the Trial Court's order. This cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellees, David E. Mensel, Mary Ford (Anne) Mensel, Michael Sabol, and Christine A. Sabol.

_____
D. MICHAEL SWINEY, CHIEF JUDGE